**STATE OF MINNESOTA**

**COUNTY OF RAMSEY**

**DISTRICT COURT**

**SECOND JUDICIAL DISTRICT**
**Case Type: Employment**
**Court File Number: TBD**
**Judicial Officer: TBD**

---

Crispin Guzman Cruz, Orlando Rodriguez Perez, Gregorio Salazar Rodriguez, & John/Jane Doe (1-20),

                        Plaintiffs,

v.

Supermercado Lomabonita Inc.; Panaderia Lomabonita INC; Panaderia Lomabonita 3 Inc.; Supermercado Lomabonita 3 Inc.; Supermercado Lomabonita #4 Inc.; Fernando Castillo; Tomas Castillo; Porfirio Castillo; Gregorio Castillo Herrera, & Gregorio Castillo Hernandez,

                        Defendants.

**FIRST AMENDED COMPLAINT**

---

PLAINTIFFS, as and for their cause of action against the above-named Defendants, state and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Crispin Guzman Cruz ("Guzman Cruz") is an individual currently residing at 2930 Blaisdell Avenue South, #342, Minneapolis, MN 55406 in Hennepin County.

2. Plaintiff Orlando Rodriguez Perez ("Rodriguez Perez") is an individual currently residing at 1743 Fremont Avenue, Floor 1, Saint Paul, Minnesota 55106.

3. Plaintiff Gregorio Salazar Rodriguez ("Salazar Rodriguez") is an individual currently residing at 1853 Stillwater Ave. East, Saint Paul, Minnesota 55119.

4. The other Plaintiffs are all individuals employed previously or presently by all the Lomabonita Defendants jointly (as defined below), or alternatively by one or more of the Lomabonita Defendants separately, but whose identities are not yet known.

1

5. Defendant Supermercado Lomabonita Inc ("Lomabonita #1") is an active Minnesota Corporation that maintains a principal executive office address at 4207 Hwy 13 West, Savage, MN 55378, and a registered address at 4129 Hwy 13 West, Savage, MN 55378, as listed with the Minnesota Secretary of State.

6. Defendant Panaderia Lomabonita INC ("Lomabonita #2") is an active Minnesota Corporation with a principal executive office and registered office address at 120 Willow Bend, Crystal, MN 55428, as listed with the Minnesota Secretary of State.

7. Defendant Panaderia Lomabonita 3 Inc. ("Lomabonita #3") is an active Minnesota Corporation that maintains a principal executive office address at 923 45th Ave. NE, Hilltop, MN 55421, and a registered address at "923 75th ST Ave. NE, Hilltop, MN 55421," as listed with the Minnesota Secretary of State.

8. Defendant Supermercado Lomabonita #4 Inc. ("Lomabonita #4") is an active Minnesota Corporation with a principal place of business, executive office, and registered address at 800 White Bear Avenue, Saint Paul, MN 55106, as listed with the Minnesota Secretary of State (each of the referenced Lomabonita entities referred to collectively as "Lomabonita Defendants" hereafter).

9. Defendant Supermercado Lomabonita 3 Inc. ("Lomabonita #5") is an active Minnesota Corporation that maintains a registered office address at 855 45th Ave. NE, Hilltop, MN 55421, as listed with the Minnesota Secretary of State.

10. Defendant Gregorio Castillo Hernandez is an individual, the listed chief executive officer and registered agent for Lomabonita Defendants with the Minnesota Secretary of State (except Fernando Castillo is registered agent for Supermercado Lomabonita Inc). Upon information and belief, Castillo Hernandez resides at 6427 W 134th St., Savage, MN 55378-4456.

2

11. Defendant Gregorio Castillo Herrera is an individual, son of Defendant Castillo Hernandez, and manager for Lomabonita #2. Upon information and belief, Defendant Castillo Herrera presently resides at 6427 W 134th St., Savage, MN 55378-4456.

12. Defendant Tomas Castillo is an individual and the manager for Lomabonita #4. Upon information and belief, Defendant Tomas Castillo presently resides at 2228 Ryberg St., Chaska, MN 55318-2845.

13. Defendant Fernando Castillo is an individual and the manager for Lomabonita #1. Upon information and belief, Defendant Fernando Castillo presently resides at 2228 Ryberg St., Chaska, MN 55318-2845.

14. Defendant Porfirio Castillo is an individual and the manager for Lomabonita #3 & #5. Upon information and belief, Defendant Porfirio Castillo presently resides at 15482 Jersey Ave. S, Savage, MN 55378-5502.

15. Defendants Gregorio Castillo Hernandez, Gregorio Castillo Herrera, Tomas Castillo, Porfirio Castillo, and Fernando Castillo shall be referred to collectively as "Castillo Defendants" hereinafter. The Castillo Defendants are all related by blood and, upon information and belief, own all or the vast majority of interests in the Lomabonita Defendants.

16. The Castillo Defendants coordinate and communicate together for the collective management of the Lomabonita Defendants, including as to employment and pay policy.

17. The Lomabonita Defendants constitute an enterprise for purposes of the FLSA which generates gross annual sales made or business done of $500,000.00 or more at all relevant times and upon information and belief.

18. Plaintiffs, and other similarly situated employees, were engaged in commerce or in the production of goods or services for commerce for purposes of the FLSA, 29 U.S.C. § 207.

3

19. The Lomabonita Defendants have willfully engaged in a pattern, policy, practice, and conspiracy in furtherance of illicit conduct for the actions alleged in this Complaint, in violation of federal and state rights of the Plaintiffs.

20. The Castillo and Lomabonita Defendants jointly determined the applicable policy and pay practices here, at least Defendant Castillo Hernandez had the power to hire and fire each Plaintiff, each of the Castillo Defendants had the ability to supervise and control each Plaintiff's work or where that work is performed, and the Plaintiffs' work was permanent, largely repetitive, integral to the overall business, and rote in nature.

21. The Lomabonita Defendants are or were joint employers of Plaintiffs under the FLSA, 29 U.S.C. § 203 and MFLSA, Minn. Stat. §§177.23 and 177.24 given the economic realities of the Lomabonita Defendants' operation.

22. The District Court for the State of Minnesota has original jurisdiction over state claims in this matter and concurrent jurisdiction over the federal claims. See 29 U.S.C. § 216(b); see generally Tafflin v. Levitt, 493 U.S. 455, 458-59 (1990); Witort v. Chicago & N.W. Ry. Co., 178 Minn. 261 (Minn. 1929); Levine v. Bayview Loan Servicing, LLC, No. A18-0789 (Minn. Ct. App. Apr. 1, 2019).

23. Ramsey County is an appropriate venue for hearing this matter because much of the conduct at issue transpired in Ramsey County and at least one of the Lomabonita Defendants is a resident of Ramsey County.

## FACTS

**Plaintiffs' Employment**

24. Plaintiff Guzman Cruz worked for the Lomabonita Defendants from approximately January 2016 to April 2018.

25. Plaintiff Guzman Cruz first started working primarily at Lomabonita #1, where Fernando Castillo was his manager.

26. Plaintiff Guzman Cruz transferred from primarily Lomabonita #1 to primarily Lomabonita #4 in March 2017.

27. Defendant Tomas Castillo was Plaintiff Guzman Cruz's primary manager at Lomabonita #4 for the duration of his time at Lomabonita #4.

28. For a period of several months, Plaintiff Guzman Cruz also alternated work between Lomabonita locations #1 and #2.

29. Plaintiff Guzman Cruz worked as a manager of the meat department while employed with the Lomabonita Defendants.

30. Plaintiff Guzman Cruz's responsibilities included receiving deliveries, tracking the grocery intake and sales of the meat department, food preservation, ensuring compliance with food safety requirements, and more.

31. Plaintiff Rodriguez Perez first worked for Lomabonita #1 from September 2015 to August 2016.

32. Plaintiff Rodriguez Perez then worked at Lomabonita #4 from September 2017 to April 2018.

33. Plaintiff Rodriguez Perez worked as a butcher in the meat department at Lomabonita #1, and as a butcher and cook in the meat department at Lomabonita #4.

34. Plaintiff Rodriguez Perez's primary responsibilities were to record inventory and to butcher and prepare various meats for sale.

35. Defendant Fernando Castillo was Plaintiff Rodriguez Perez's primary manager at Lomabonita #1, while Tomas Castillo was the primary manager during Plaintiff's time of employment at Lomabonita #4.

36. Plaintiff Salazar Rodriguez worked for the Lomabonita Defendants from approximately October 2017 through April 2018.

37. Plaintiff Salazar Rodriguez primarily worked at Lomabonita #4 where Tomas Castillo was his primary manager.

38. Plaintiff Salazar Rodriguez worked in both the meat department and the grocery department where his responsibilities were to organize the meat and produce for the store, clean the work-station, put groceries on display, and more.

**Terms of Compensation**

39. At least by January 2016, Defendants agreed to compensate Plaintiff Guzman Cruz in the amount of $14.00 per hour, before taxes or other deductions.[1]

40. Defendants agreed to increase Plaintiff Guzman's pay to $15.00 per hour in approximately April 2017.

41. Plaintiff Guzman Cruz maintained a regular work schedule from 6:30am to 5:30pm, seven days a week, amounting to approximately (77) hours per week or more while he was working at Lomabonita #1 in Savage, Minnesota.

42. Plaintiff Guzman Cruz maintained a regular work schedule from 5:30am to 10:00pm, seven days a week, and amounting to approximately (110) hours per week or more while he was working at Lomabonita #4 in Saint Paul, Minnesota.

---

[1] All stated wages shall be provided in gross amounts before taxes or deductions.

43. Defendant Lomabonita #1 agreed to compensate Plaintiff Rodriguez Perez $11.50 per hour for the duration of his employment.

44. At least by September 2017, Defendant Lomabonita #4 agreed to compensate Plaintiff Rodriguez Perez $12.00 per hour.

45. The Lomabonita #4 Defendants agreed to further increase Plaintiff Rodriguez Perez's rate of compensation after three months of employment, but never did so.

46. Plaintiff Rodriguez Perez's worked an average of 66 hours per week at Lomabonita #1, and an average of 51 hours per week Lomabonita #4.

47. At Lomabonita #1, Plaintiff Rodriguez Perez usually worked from 10:00am to 10:00pm during weekdays and 6:00am to 3:30pm during weekends.

48. Plaintiff Rodriguez Perez generally worked at least six days per week at Lomabonita #1.

49. At Lomabonita #4, Plaintiff Rodriguez Perez usually worked from 6:00am to 3:30pm, six days a week.

50. Because the stores needed extra staff support over the winter holiday season, Plaintiff Rodriguez Perez's hours were increased to approximately 61 hours at Lomabonita #4 during November and December 2017.

51. By at least October 15, 2017 Defendant Lomabonita #4 agreed to compensate Plaintiff Salazar Rodriguez $10.00 per hour for his work.

52. Defendants agreed to increase Plaintiff Salazar Rodriguez' pay to $11.00 per hour after approximately two weeks.

53. Plaintiff Salazar Rodriguez worked an average of 85 hours per week at Lomabonita #4.

54. Plaintiff Salazar Rodriguez usually worked from 6:00am to 3:00pm in the meat department, and from 4:00pm often until 9:00pm or after in the grocery department.

55. Plaintiff Salazar Rodriguez typically worked seven days per week, but occasionally had reduced hours for one day.

56. Other Plaintiffs received similar rates of pay and worked similar hours.

**Failure to Compensate Employees for Hours Worked**

57. Defendants agreed to pay employees, including Plaintiffs, once per week.

58. The last day of work for the three named Plaintiffs was approximately April 2, 2018.

59. While working for Defendants, Plaintiffs did not receive all pay to which they were entitled, including for all their overtime hours.

60. Instead, for the duration of their employment with Defendants, Plaintiffs were compensated on the company payroll for approximately thirty (30) hours of work per week and were paid straight time in cash for hours of work performed beyond the hours reflected on each check.

61. Defendants issued paychecks and paystubs to Plaintiffs reflecting approximately thirty (30) hours per week.

62. The payroll documents issued by Defendants made it appear that Plaintiffs were entitled to or actually paid less in wages than Plaintiffs actually earned and were paid.

63. Under the Minnesota Fair Labor Standards Act, for example, the amount of overtime pay earned by Plaintiff Guzman Cruz and converted, or yet unpaid, by Defendants totals in excess of $40,000.00.

64. Under the Minnesota Fair Labor Standards Act, for example, the amount of overtime pay earned by Plaintiff Rodriguez Perez and converted by, or yet unpaid, by Defendants totals in excess of $5,000.00.

65. Under the Minnesota Fair Labor Standards Act, for example, the amount of overtime pay earned by Plaintiff Salazar Rodriguez and converted by, or yet unpaid, by Defendants totals in excess of $6,100.00.

66. Defendants conspired together to engage in the practices detailed above, for both the named Plaintiffs and other employees, at all named Lomabonita locations, by coordinating to implement similar pay practices and policies which resulted in the pay violations alleged.

67. Both the named and unnamed Plaintiff-employees were injured by these practices.

**Lomabonita Defendants' Violations**

68. Plaintiff Guzman Cruz initially requested his overtime pay from Defendants in April 2016, four months after Defendants hired him.

69. Plaintiff Guzman Cruz made other inquiries and requests about the unpaid wages due to him, including after his separation from employment.

70. Plaintiff Rodriguez Perez has also demanded his unpaid wages after the time of his separation from employment on or around April 2, 2018.

71. Plaintiff Salazar Rodriguez formally demanded his unpaid wages after termination by notice of claim initiating his participation in this lawsuit.

72. To date, Plaintiffs still have not been compensated fully for the work already performed for the Lomabonita Defendants, despite their demands.

73. The Lomabonita Defendants engaged in a pattern and practice of manipulating employees' recorded hours so as to reduce wages owed and overtime pay due on the applicable payroll records, including for Plaintiff Guzman Cruz and Plaintiff Rodriguez Perez.

74. Defendants engaged in similar unlawful payment practices, as related above, for other employees, presently identified as John and Jane Does 1-20.

75. The other Plaintiffs have similarly made inquiries and requests about the unpaid wages due to them but have also not yet been fully compensated for work performed.

76. The nonpayment by Defendants as to all Plaintiffs is willful and not the result of mistake or inadvertence.

77. Defendants harmed Plaintiffs directly and proximately through the above-described conduct.

**COUNT ONE**
**MINNESOTA PAYMENT OF WAGES ACT (PWA)**
**Minn. Stat. §§ 181.01 et seq. (2018)**
**(All Plaintiffs against Lomabonita Defendants)**

78. Plaintiffs incorporate by reference each and every paragraph of Plaintiffs' Complaint.

79. Plaintiffs have a private right of action under the PWA.

80. Defendants are employers as defined in Minn. Stat. § 181.171, subd. 4.

81. Plaintiffs were all employees of Defendants for purposes of the PWA.

82. In Minnesota, "every employer must pay all wages earned by an employee at least once every 31 days … regardless of whether the employee requests payment at longer intervals." M.S.A. § 181.101 (a)(2018).

83. Further, when employment is terminated, full wage payment must be paid not later than the first regularly scheduled payday after employment ends. M.S.A. § 181.14, subd. 1(a)(2018).

84. If not timely paid, an employee may demand such payment.

85. To date, Defendants owe Plaintiff Guzman Cruz wages in excess of $40,000.00, Plaintiff Rodriguez Perez in excess of $5,000.00, and Plaintiff Salazar Rodriguez in excess of $6,100.00.

86. If payment is not made by 10 days after the demand, an employee is entitled to a penalty "in the amount of the employee's average daily earnings at the rate … in the contract of employment, not exceeding 15 days in all." Id. at subd. 2.

87. Plaintiffs no longer employed with Defendants, including Guzman Cruz, Rodriguez Perez, and Salazar Rodriguez demanded their respective unpaid wages, including after quit, discharge, termination, or resignation and Defendants have not paid Plaintiffs' wages to date.

88. Plaintiff Guzman Cruz's average daily wage was $220.00, meaning 15 days' pay would equal $3,300.00.

89. Plaintiff Rodriguez Perez's average daily wage was $135.00, meaning 15 days' pay would equal $2,025.00.

90. Plaintiff Salazar Rodriguez's average daily wage was $132.00, meaning 15 days' pay would equal $1,980.00.

91. Other Plaintiffs were entitled to similar average daily wages.

92. Plaintiffs are entitled to sue and recover damages for all unpaid wages plus an additional amount equal to 15 days' wages, other compensatory damages, an injunction restraining Defendants from further such activity, attorney fees, and costs. M.S.A. § 181.171 (2018).

93. Similarly, the PWA prohibits certain practices by employers which have the effect that document paid wages as greater than those actually paid. M.S.A. § 181.03, subd. 1 (2018).

94. Defendants manipulated the payroll documents for Plaintiffs to make it appear as if the Plaintiffs worked fewer hours than actually worked during a payroll cycle.

95. Those manipulations altered pay records for wages in excess of $100,000.00 for Plaintiff Guzman Cruz; in excess of $30,000.00 for Plaintiff Rodriguez Perez; and in excess of $25,000.00 for Plaintiff Salazar Rodriguez.

96. Defendants pay record manipulations and pay practices also included Defendants failure to report, or misreporting, Plaintiffs' income and withholding for various tax or other regulatory purposes.

97. Defendants engaged in similar such practices for other Plaintiffs.

98. Plaintiffs are entitled to sue and recover damages equal to twice the amount of disputed wages, which amount shall be determined at trial. M.S.A. § 181.03, subd. 3 (2018).

**COUNT TWO**
**FEDERAL FAIR LABOR STANDARDS ACT (FLSA)**
**29 U.S.C. §§ 201 et seq. (2018)**
**(All Plaintiffs against Lomabonita Defendants)**

99. Plaintiffs incorporate by reference each and every paragraph of Plaintiffs' Complaint.

100.   Plaintiffs have a private right of action under the FLSA.

101.   Defendants are employers as defined in 29 U.S.C. §203 (d), including for overtime pay.

102.   Plaintiffs are all employees of Defendants as defined under 29 U.S.C. §203 (e), including for overtime pay.

103.   Plaintiffs are entitled to overtime wages at 1.5 times their regular wages for all hours worked in excess of 40 hours in a week under 29 U.S.C. §207 (a).

104.   At the applicable rates of pay, Defendants should have paid Plaintiff Guzman Cruz at least an additional $45,000.00 for overtime wages.

105.   At the applicable rates of pay, Defendants should have paid Plaintiff Rodriguez Perez at least an additional $8,000.00 for overtime wages.

106.   At the applicable rates of pay, Defendants should have paid Plaintiff Salazar Rodriguez at least and additional $7,400.00 for overtime wages.

107.   Other Plaintiffs are owed similar amounts for work with Defendants.

108.   Defendants knowingly and in bad faith failed to pay wages due to Plaintiffs.

109.   Because of Defendants' actions, Plaintiffs suffered damages.

110.    Plaintiffs are entitled to bring suit and recover an award of damages for those unpaid overtime wages plus an additional equal amount in liquidated damages and any other compensatory damages. 29 U.S.C. §216 (b).

111.    Plaintiffs are entitled to costs, disbursements, and witness and attorney fees.  Id.

## COUNT THREE
## MINNESOTA FAIR LABOR STANDARDS ACT (MFLSA)
## Minn. Stat. §§ 177.21 et seq. (2018)
## (All Plaintiffs against Lomabonita Defendants)

112.    Plaintiffs incorporate by reference each and every paragraph of Plaintiffs' Complaint.

113.    Plaintiffs have a private right of action under the MFLSA.

114.    Defendants are employers within the meaning of Minn. Stat. § 177.23, subd. 6 (2018).

115.    Defendants are a small or large employer as defined in Minn. Stat. § 177.24, subd. 1(a).

116.    Plaintiffs are all employees of Defendants as defined under Minn. Stat. § 177.23, subd. 7.

117.    Plaintiffs are all employees for overtime calculated under Minn. Stat. § 177.25.

118.    Plaintiffs are entitled to overtime wages at 1.5 times their regular wages for all hours worked in excess of 48 hours in a week under Minn. Stat. § 177.25.

119.    At the applicable rates of pay, Defendants should have paid Plaintiff Guzman Cruz an additional $40,000.00 for overtime wages.

120.    At the applicable rates of pay, Defendants should have paid Plaintiff Rodriguez Perez an additional $5,000.00.

121.    At the applicable rates of pay, Defendants should have paid Plaintiff Salazar Rodriguez an additional $6,100.00.

122.    Other Plaintiffs are owed similar amounts for work with Defendants.

123.    Defendants knowingly and in bad faith failed to pay wages due to Plaintiffs.

124.    Because of Defendants' actions, Plaintiffs suffered damages.

125. Plaintiffs are entitled to bring suit and recover an award of damages for those unpaid overtime wages plus an additional equal amount in liquidated damages and any other compensatory damages. Minn. Stat. § 177.27, subd. 5-8 (2018).

126. Plaintiffs are entitled to costs, disbursements, and witness and attorney fees. Id. at subd. 10.

## COUNT FOUR
## CIVIL CONSPIRACY
## (All Plaintiffs against all Defendants)

127. Plaintiffs incorporate by reference each and every paragraph of Plaintiffs' Complaint.

128. Upon information and belief, the Castillo Defendants are siblings.

129. The Castillo Defendants each have managerial and/or executive roles for the oversight or policy decisions of the Lomabonita Defendants.

130. Each Lomabonita Defendant maintained the same or similar policies that resulted in failure to adequately pay employees for all hours worked, including after a demand for payment, and which also manipulated the pay records of employees.

131. As detailed throughout the Complaint, Lomabonita Defendants' conduct was unlawful.

132. The Castillo and Lomabonita Defendants all worked together to accomplish the unlawful purpose of denying employees, including Plaintiffs, their earned wages and manipulating their pay records.

133. Plaintiffs were harmed by the Defendants' conspiracy.

## COUNT FIVE
## FRAUDULENT INFORMATION RETURNS
## 26 U.S.C. §7434
## (All Plaintiffs employed in 2018 by Defendants against All Defendants)

134. Plaintiffs incorporate by reference each and every paragraph of Plaintiffs' Complaint.

135. Plaintiffs have a private right of action under Section 7434.

136.   Defendants willfully filed W-2 and other information returns about payments made to Plaintiffs for calendar and tax year 2018, including failure to report wages paid "off the books" in cash.

137.   By filing such returns, Defendants substantially reduced their obligation for payment of taxes pursuant to, without limitation, the Federal Insurance Contributions Act and Federal Unemployment Tax Act.

138.   Under Section 7434, Plaintiffs are entitled to bring suit and recover an award of damages for the greater of $5,000.00 or the sum of: (1) actual damages (including costs to resolve deficiencies); (2) costs of the action; and (3) reasonable attorneys' fees.

139.   Plaintiffs have each suffered damages by now being required to investigate and address deficiencies or discrepancies in their tax reporting.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendants as follows:

1.   An Order determining the appropriate amount Defendants should have disclosed in their information returns relating to Plaintiffs.

2.   Awarding Plaintiffs damages for unpaid wages with all applicable statutory or legal penalties and other enhancements in an amount to be determined at trial, but in excess of $50,000.00 each;

3.   Granting judgment with all applicable interest, costs, fees, and disbursements herein, and awarding all monetary, statutory, and other damages to which Plaintiffs are entitled;

4.   Awarding Plaintiffs their attorneys' fees to the extent Minnesota statutes so allow;

5.   Granting other legal, injunctive, or equitable relief as the Court deems just and equitable.

Plaintiffs reserve the right to amend the Complaint, including for punitive damages where available. Plaintiffs also reserve, pursuant to Minn. R. Civ. P. 38.01, their right to trial by jury.

## SIGNATURE AND ACKNOWLEDGMENT

_Crispin Guzman Prez_                                        3/25~19

Crispin Guzman Cruz                                         Date


_(signature)_                                               3/25/19

Orlando Rodriguez Perez                                     Date


_Gregorio Salazar Rodriguez_                                3/25/19

Gregorio Salazar Rodriguez                                  Date


_(signature)_                                               3/26/19

Michael D. Gavigan                                          Date
Minnesota Attorney Lic. No. 0393053
Wilson Law Group
3019 Minnehaha Avenue
Minneapolis, Minnesota 55406
Phone: 612.436.7100
Fax: 612.436.7101
Email: mgavigan@wilsonlg.com


## ACKNOWLEDGEMENT

The undersigned acknowledges that costs, disbursements, and reasonable attorney and witness

fees may be awarded pursuant to Minnesota Statutes section 549.211 (2018).

_(signature)_                                               3/26/19

Michael D. Gavigan                                          Date
Minnesota Attorney Lic. No. 0393053
Wilson Law Group
3019 Minnehaha Avenue
Minneapolis, Minnesota 55406
Phone: 612.436.7100
Fax: 612.436.7101
Email: mgavigan@wilsonlg.com